**Eduardo GONZALEZ, Plaintiff,**

v.

**CITY OF NEW YORK, New York City Police Department, Keith Cunningham, Samuel Paneccio, and John Huber, in their individual and official capacities, Defendants.**

No. 99 Civ. 9128(SAS).

United States District Court,
S.D. New York.

May 31, 2000.

Paul N. Cisternino, Cisternino & Weinstein, LLP, White Plains, NY, for Plaintiff.

Laura H. Corvo, Assistant Corp. Counsel, New York City, for Defendants.

### MEMORANDUM OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff, a former police officer with the New York City Police Department ("NYPD"), is suing, *inter alia,* Keith Cunningham, Samuel Paneccio and John Huber (the "individual defendants"), for violations of 42 U.S.C. §§ 1981, 1983 and 1985. Although settlement discussions with defendants are ongoing and a trial has been scheduled for July 5, 2000, plaintiff has moved for the entry of default judgments against the individual defendants because they failed to answer the Complaint. For the following reasons, plaintiff's motions are denied. The individual defendants are directed to file and serve their answer forthwith.

## I. Facts

The Complaint was filed on August 24, 1999 and the individual defendants were served on October 19, 1999. *See* Declaration of Laura H. Corvo, Assistant Corporation Counsel, dated May 8, 2000 ("Corvo Decl.") ¶¶ 3–4. The matter was subsequently referred to the New York City Law Department and assigned to former Assistant Corporation Counsel Tania M. Torno. *Id.* ¶ 6. On December 7, 1999, Ms. Torno and plaintiff's counsel, Paul N. Cisternino, attended an initial pre-trial conference where I entered a Scheduling Order setting March 30, 2000 as the discovery cutoff. *Id.* ¶ 7. On February 3, 2000, counsel for the parties attended a settlement conference before Magistrate Judge Michael H. Dolinger. *Id.* ¶ 11. I held another pre-trial status conference on March 21, 2000. *Id.* ¶ 12. At no time during these last two conferences did plaintiff's counsel mention that the individual defendants had not filed an answer. *Id.* ¶ 13.

Following the March 21 conference, Mr. Cisternino sent a letter dated April 10, 2000 to Ms. Torno following up on certain settlement issues raised at that conference. *See* Corvo Decl. Ex. A. Ms. Torno responded with a letter dated April 11, 2000 asking Mr. Cisternino to inform her of plaintiff's monetary demand so she could contact the Comptroller's Office. Corvo Decl. Ex. B. In a letter dated April 17, 2000, Mr. Cisternino informed Ms. Torno that plaintiff's demand was $20,000. Corvo Decl. Ex. C. He also wished Ms. Torno good luck in her future endeavors. *Id.* Mr. Cisternino did not mention the fact that defendants had not filed an answer in either his April 10 or April 17 letters. On April 27, 2000, the individual defendants were served with plaintiff's motions for default judgments. Corvo Decl. ¶ 20.

## II. Discussion

### A. Legal Standard

■ Although it is the preference in this Circuit to decide cases on the merits rather than by default, " '[t]he dispositions of motions for entries of defaults and default judgments ... are left to the sound discretion of the district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties.' " *Shah v. New York State Dept. of Civil Service*, 168 F.3d 610, 615 (2d Cir. 1999) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir.1993)).

■ In deciding a motion for default judgment, a district court is to be guided principally by the following three factors: (1) whether the default was willful; (2) whether the defendant has demonstrated the existence of a meritorious defense; and (3) whether, and to what extent, granting the default will cause prejudice to the non-defaulting party. *Cf. SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir.), *cert. denied*, 525 U.S. 931, 119 S.Ct. 340, 142 L.Ed.2d 281 (1998) (motion to vacate a default judgment) (citing *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir.1983)).

### B. Willfulness

■ The Second Circuit has interpreted " 'willfulness,' in the context of a default, to refer to conduct that is more than merely negligent or careless." *McNulty*, 137 F.3d at 738 (citing *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (default due to filing mistake by defendant's in-house counsel's clerk held to be not willful); *Davis v. Musler*, 713 F.2d at 915–16 (default due to failure to note that complaint in second suit, served simultaneously with subpoenas and deposition notices in similar first suit, initiated a new lawsuit, may be found non-willful); *Enron Oil Corp. v. Diakuhara*, 10 F.3d at 97 (failure to answer second amended complaint should be held non-willful where pro se defendant, who had timely answered prior complaints and promptly opposed motion to enter default, did not, as he claimed, receive second amended complaint)).

■ On the other hand, a default may be found to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained. *See McNulty*, 137 F.3d at 738–39 (citing *United States v. Cirami*, 535 F.2d 736, 739 (2d Cir.1976) (default found willful where attorney failed, for unexplained reasons, to respond to a summary judgment motion); *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 666 (2d Cir.1980) (same where attorney failed, for flimsy reasons, to comply with scheduling orders); *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243–44 (2d Cir.1994) (same where defendant purposely evaded service for months and then failed, for untenable reasons, to answer the complaint)).

■ Here, plaintiff has failed to prove defendants acted willfully. Instead, defendants' counsel held the reasonable belief that the action would be settled, thereby obviating the need for a formal response. *See* Corvo Decl. ¶ 9 (it was the understanding of counsel that "while the parties were engaging in good-faith settlement negotiations, formal pleadings and discovery would not go forward"). This belief is further supported by the fact that plaintiff never sought any discovery in this action.

Although the individual defendants should have answered despite the settlement negotiations, their failure to do so does not evince the type of bad faith which would warrant default judgments against them. Rather, the individual defendants' failure to answer is more akin to an administrative oversight. Such negligence is easily understood when one considers the enormous caseload handled by the Corporation Counsel in the wake of ever-increasing litigation against the City of New York.

Plaintiff's reliance on *McNulty* for the proposition that a defendant's failure to answer is not absolved by reason of settlement negotiations is inapposite. In *McNulty*, the Second Circuit declined to vacate a judgment of default entered by the district court against one of the defendants, John M. Shanklin. 137 F.3d at 741. The action was commenced on September 30, 1994 and following that:

Shanklin's time to answer the complaint was extended to December 13, 1994, and then to December 27. Rucker [defendant's attorney] did not file an answer on behalf of Shanklin or move to dismiss the action. Nor did he attend any of the pretrial conferences called by the district court or, despite co-counsel's urging, join in the other defendants' motions to dismiss or to change venue. Although Rucker and the SEC discussed settlement of the case against Shanklin, those discussions proved fruitless. In April 1995, with Shanklin's answer some four months overdue, the SEC sent Rucker a letter stating that if the answer were not forthcoming the Commission would seek entry of a default. The SEC sent Rucker similar letters in May and June. No answer was ever filed. The SEC moved for entry of a default in August 1995.

*McNulty*, 137 F.3d at 734. The district court, receiving no response to the SEC's motion, entered a default judgment against Shanklin on September 11, 1995. *Id.*

The Second Circuit declined to vacate that judgment on the ground, *inter alia*, that defendant's conduct in refusing to answer had been willful. *Id.* at 739. In so holding, the court based its ruling on the egregious nature of defendant's conduct[1] and the notices sent by the SEC warning defendant of its intention to seek entry of default. The court's ruling was not based on the existence of failed settlement negotiations. Thus, *McNulty* does not stand for the broad proposition that ongoing, good faith settlement negotiations can nev-

---

1. The court imputed Rucker's conduct to Shanklin, stating that "where the attorney's conduct has been found to be willful, the willfulness will be imputed to the party himself where he makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit." 137 F.3d at 740.

er relieve a defendant of his duty to answer. At most, it advises district courts to consider whether a default judgment is warranted under the circumstances of each case.

## C. Meritorious Defense

 In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, a defendant need not establish his defense conclusively, *see, e.g., Davis v. Musler*, 713 F.2d at 916, but must present evidence of facts that, "if proven at trial, would constitute a complete defense." *Enron Oil Corp. v. Diakuhara*, 10 F.3d at 98 (citations omitted).

 Here, defendants intend to assert a defense of qualified immunity. *See* Defendants' Memorandum in Opposition to Plaintiff's Motion for a Default Judgment ("Opp.Mem.") at 8. In order to establish such a defense, defendants must establish either (1) that the alleged conduct did not violate clearly established rights of which a reasonable person would have known, or (2) that it was objectively reasonable to believe that the conduct did not violate clearly established rights. *See Anderson v. Creighton*, 483 U.S. 635, 637–41, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Municipal officials are immune from liability for damages if, at the time of the act, it was not clear that the actions they took violated clearly established constitutional rights. *See McEvoy v. Spencer*, 124 F.3d 92, 96 (2d Cir.1997).

 Here, the individual defendants will assert that they stopped and detained plaintiff after observing him swerve his car, believing that he was driving while intoxicated. Opp. Mem. at 9. If a jury believes them, their acts did not violate any clearly established constitutional or statutory right. Accordingly, the individual defendants have proffered a meritorious defense with respect to plaintiff's § 1983 and § 1981 claims.

 The individual defendants will also argue that plaintiff has not alleged a conspiracy of two or more persons. Opp. Mem. at 9. To establish a viable § 1985 claim, a plaintiff must show that a conspiracy existed "among two or more persons." 42 U.S.C. § 1985(3). The Second Circuit has held that a conspiracy among two or more employees of the same corporation, acting in the normal course of their employment, does not constitute a conspiracy. *See Gatling v. Fashion Ass'n*, 98 Civ. 2251, 1999 WL 637232, at *2 (S.D.N.Y. Aug. 20, 1999) (citing *Girard v. 94th Street and Fifth Avenue Corp.*, 530 F.2d 66, 71 (2d Cir.1976)). Because plaintiff only alleges violations by the NYPD and the individual defendants who are employed by the NYPD, the individual defendants will argue that plaintiff has failed, as a matter of law, to state a claim for conspiracy. Opp. Mem. at 9.

## D. Prejudice

 Plaintiff argues that he has been prejudiced by the individual defendants' failure to answer because he relied on the Corporation Counsel's representations of good faith negotiations in not pursuing discovery. Plaintiff claims that by failing to answer, the individual defendants attempted to force plaintiff to conduct discovery in a vacuum. Plaintiff claims to be prejudiced as a result of this Court's reluctance to adjourn the July 5, 2000 trial date.

Plaintiff complains that because defendants have not answered he cannot conduct meaningful discovery and that he is now limited to a short period of time to complete all discovery. This complaint is disingenuous. Plaintiff's decision to forego discovery in light of the ongoing settlement discussions was his decision and his alone. The lack of an answer, consisting typically of blanket denials, was unlikely to have meaningfully affected this decision.

Plaintiff should have conducted discovery despite the settlement negotiations. This is not a situation where defendants resisted discovery—no discovery demands were ever made. Plaintiff cannot now

claim that he has been prejudiced by defendants' failure to answer when the discovery he declined to pursue could have been completed without his receiving a formal answer.

Plaintiff's argument that Corporation Counsel somehow held out the carrot of settlement to dissuade him from conducting discovery is equally unavailing. Plaintiff's counsel knows full well that sometimes cases settle and sometimes they do not. His decision to cut costs and avoid discovery in reliance on an expected fruitful settlement resulted from misguided optimism. The individual defendants should not suffer default judgments against them based on plaintiff's unilateral and erroneous decision.

However, in an effort to ameliorate the situation, discovery is extended through July 24, 2000. The trial scheduled for July 5, 2000 is adjourned to August 28, 2000.

### III. Conclusion

Under the circumstances, plaintiff should not be permitted to reap a windfall simply by reason of the Corporation Counsel's oversight in failing to answer. Plaintiff entered into settlement talks with defendants, failed to mention that he never received a formal answer despite several opportunities to do so, and then moved for default judgments against defendants with no notice whatsoever. Such "sharp" practice will not be countenanced by this Court. Furthermore, to the extent that the instant motions were brought in an attempt to coerce a settlement, counsel should be warned that this Court strongly disapproves of such manipulative tactics. For the foregoing reasons, plaintiff's motions are denied. The individual defendants are directed to file and serve their answer to the Complaint forthwith. *See* Corvo Decl. Ex. D. A final pre-trial conference is scheduled for July 26, 2000 at 4:30 p.m.